### PENN-NATIONAL HARDWARE MUTUAL et al. v. GENERAL FINANCE CORPORATION.

(Circuit Court of Appeals, Fifth Circuit. December 10, 1926.)

No. 4792.

1. Insurance ⊚⟹668(4)—Evidence that insured finance company knew of automobile dealer's fraud, in issuing worthless obligations securing loans held sufficient to go to jury.

In action on insurance policy to indemnify finance corporation for losses in financing automobile dealers in purchase and sale of automobiles resulting from fraud, evidence that insured had actual knowledge of dealer's fraud in issuing worthless obligations on which insured made loans *held* sufficient to go jury.

2. Insurance ⊚⟹430—Indemnity policy covering losses in financing automobile dealers held not to insure against loss of profits.

Policy to indemnify finance company for losses in financing automobile dealers in purchase and sale of automobiles *held* not to insure against loss of profits to finance company on worthless obligations.

3. Insurance ⊚⟹430—Finance company sustained no loss within indemnity policy by exchanging fictitious obligations issued before date of policy for equally worthless obligations thereafter.

Finance company sustained no loss, within indemnity policy insuring it against loss by fraud, by exchange of fictitious obligations issued by automobile dealers securing loans, issued prior to date of policy in exchange for equally worthless obligations issued after such date.

4. Insurance ⊚⟹332(2)—Writing of letters by finance company to dealers, stating amount of obligations held and requesting confirmation held insufficient checking with indemnity policy.

Mere writing of letters by finance company to automobile dealers, stating amount of obligations on which it had loans and requesting reply admitting or denying that amount stated was correct, *held* insufficient checking of such obligations, within policy insuring finance com-

pany against losses by fraud, and requiring it to make monthly investigation whether obligations were on hand as reported by dealers.

**5. Insurance ⬤⟹332(2)—Indemnity policy provision requiring finance company to make monthly check of obligations held warranty, breach of which barred recovery for subsequent losses.**

Provision of indemnity policy insuring finance company against loss by fraud, requiring insured to make regular monthly check of obligations on which it had loans, *held* to constitute warranty by insured, breach of which prevented recovery on policy for subsequent losses.

In Error to the District Court of the United States for the Western District of Texas; Charles A. Boynton, Judge.

Action by the General Finance Corporation against the Penn-National Hardware Mutual, a corporation of Huntingdon, Pa., and another. Judgment for plaintiff, and defendants bring error. Reversed and remanded.

Allen R. Grambling, of El Paso, Tex. (Jones, Hardie & Grambling, Lea, McGrady, Thomason & Edwards, and McBroom & Scott, all of El Paso, Tex., on the brief), for plaintiffs in error.

Wm. H. Burges and Joseph G. Bennis, both of El Paso, Tex. (A. H. Culwell, of El Paso, Tex., on the brief), for defendant in error.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

BRYAN, Circuit Judge. This is an action to recover for losses insured against by a policy of indemnity insurance. The policy was dated May 10, 1924, and was issued by the defendant Penn-National Hardware Mutual in favor of the plaintiff, General Finance Corporation. It provided against "loss resulting from the violation of the terms of any trust receipt, mortgage or lease agreement, conditional sales agreement in which the assured shall have a pecuniary interest, which, for the purpose of this policy, shall hereinafter be known as obligations, by reason of the wrongful sale, mortgage, pledge, conversion, concealment, or disposing, by any person or persons who shall have executed an obligation to the assured, of any motor vehicle in the possession of said person or persons, or by the conversion of the proceeds of sale thereof by said person or persons, or by reason of the nondelivery to any person or persons, or fraudulent or fictitious sale of the motor vehicle described in said trust receipt, mortgage, conditional sale, or lease agreement (or bills of lading therefor), subject to the warranties, stipulations, agreements, and conditions hereinafter set forth."

The policy also contains the following provisions: "This entire policy shall be void if the assured has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or in any case of fraud, attempted fraud, or false swearing willfully or intentionally done by the assured touching any matter relating to this insurance or the subject thereof whether before or after a loss." "If the assured shall make any claim, knowing the same to be false or fraudulent, as regards amount or otherwise, said insurance shall become void, and all claims thereunder shall be forfeited."

Paragraph XII of the form of policy usually issued by defendant required the assured to make monthly a physical checking of automobiles. That paragraph was not satisfactory to plaintiff, and upon its insistence was changed, so as to provide for a regular monthly checking of wholesale or dealer's obligations accepted as security for loans made by the assured. There remained unchanged a sentence in that paragraph reading, "unless at the cost of the company, however, the method of monthly checking adopted by the assured shall be acceptable to the company," except that for the word "checking" the word "check" was substituted. The American Surety Company was joined as a defendant by reason of its having become surety on the policy to the extent of $10,000.

Plaintiff's claim is based upon its acceptance of 93 retail obligations, representing mortgages upon that number of Paige and Jewett automobiles purporting to have been sold by the Cooke Motor Company to individual purchasers, and upon 7 wholesale obligations; that is mortgages by the Cooke Motor Company upon automobiles purporting to have been purchased from the factory. The retail obligations aggregated upwards of $105,000, and the wholesale obligations $7,916; but both classes of obligations included 15 per cent., or about $16,000, of profit which the plaintiff expected to make. As a matter of fact, automobiles bearing the numbers described in the obligations had been manufactured, but not a single one of them had ever been delivered to the Cooke Motor Company; so that all such obligations were fraudulent and fictitious, and did not represent any automobile that had ever been in its possession. Therefore the fraud of the Cooke Motor Company in issuing the obligations is established beyond dispute.

Plaintiff claims that it had no knowledge

of the fraudulent and fictitious character of the obligations. The defenses interposed included the following: (1) That plaintiff did have such knowledge—in fact, was a participant in the fraudulent scheme—and should be denied any recovery whatever; (2) that recovery for the face of the obligations could not be had for the reasons (a) that, at the time the policy became effective, plaintiff had in its possession fraudulent and fictitious obligations of the Cooke Motor Company aggregating about $52,000, and worthless paper bringing the total up to nearly $100,000, which fraudulent, fictitious, and worthless paper was exchanged for equally worthless paper issued subsequently to the date of the policy; (b) that a substantial part of the money advanced by plaintiff was upon obligations accepted by it after the date of the first monthly checking which plaintiff was required to make, and that, as to such obligations thereafter issued, defendant was relieved from liability by the terms of the policy; and (c) that in any event defendant could not be held bound for plaintiff's profits of about $16,000, but was only liable for the actual amount lost by plaintiff in its dealings with the Cooke Motor Company.

[1] Plaintiff was engaged in the business of financing automobile dealers in the purchase of automobiles from the factory, and in selling them on the installment plan to individual purchasers, and had been dealing with the Cooke Motor Company for some time. As early as January, 1924, it applied for insurance which would protect it against loss upon acceptance of obligations of automobile dealers and individual purchasers by reason of fraudulent and fictitious sales.. Up to the time of issuance of policy in suit, it had on hand fraudulent and fictitious obligations amounting to about $52,000, which it had accepted from the Cooke Motor Company. In addition, it held paper of that company of the face value of $54,000, all of which, except about $12,000, proved to be worthless on account of having been signed by accommodation indorsers or irresponsible parties.

After the policy was issued, and up to November, 1924, when the Cooke Motor Company failed, fraudulent and fictitious obligations antedating the policy were taken up by the Cooke Motor Company with money advanced by plaintiff on like obligations accepted by it subsequently to the date of the policy. Throughout the whole course of plaintiff's dealings with the Cooke Motor Company a form of purchaser's obligation was used which included his street address, and it was plaintiff's custom to send a letter to such address, stating that it had acquired the purchaser's obligation and was entitled to future payments thereon, and requesting a recognition by such purchaser of its rights. Many of these letters were returned unclaimed. More than 40 of the supposed purchasers of the 93 retail obligations involved in this suit were represented as living in El Paso, where both the plaintiff and Cooke Motor Company had their places of business; but 49 of the 93 notices were returned as unclaimed by the addressees.

Some payments were made on these contracts, but in every instance they were made by the Cooke Motor Company, which, in some unexplained manner, received some of the notices mailed to supposed purchasers. Plaintiff was a subscriber to, and received each morning, the Commercial Recorder, a publication giving information of courthouse records, including records of automobile licenses and mortgages. During the period covered by the policy, licenses were issued for only 6 Paige cars and only 7 Jewett cars. A director of the plaintiff corporation, who, however, was not active in the conduct of its business, testified that its president, Mr. Cunningham, told him that investigations were being made of the license records of automobiles. That testimony was not denied by Cunningham, although he testified that no investigation of courthouse records was in fact made.

The only effort made by plaintiff to make a checking of the Cooke Motor Company's wholesale obligations was to write a letter on the 1st of each month, stating simply the amount of such obligations, and requesting a reply stating whether that amount was correct. At the close of all the evidence the trial court, over defendant's objection and exception, instructed a verdict for plaintiff for the full amount represented by the face of the obligations.

Under the language of the policy of insurance, plaintiff was not bound to make any investigation, and cannot be prevented from recovery unless it had actual knowledge of the fraud perpetrated by the Cooke Motor Company; but, if it did have such knowledge, it concealed that fact and committed a fraud, which rendered the policy void and precluded any subsequent right of recovery. We are of opinion that there was enough evidence tending to show such actual knowledge to make it error to take the case away from the jury. If plaintiff had made the slightest investigation, it could not have failed to discover the fraud of the Cooke Motor Company. An inquiry at any one of the addresses on the letters which were returned unclaimed, or

an investigation of the license records, would have disclosed the fact that no automobile pledged to plaintiff as security had been sold or licensed, or had ever been in the possession of the automobile dealer. The jury had the right to infer from the circumstances in evidence that plaintiff, as a reasonably careful business concern, made some inquiry or investigation, and consequently that it did discover the fraud.

It is consistent with the evidence that plaintiff, having become aware that it was in possession of fraudulent and fictitious obligations, set about to procure insurance and to replace such obligations with others of like character at defendant's expense. Its loss after the policy was issued did not increase more than $10,000 or $12,000. But it is said that even the risk of losing that amount would have been sufficient to dissuade plaintiff from making the dishonest attempt to protect itself by taking out insurance. Whether that be so or not, taking into consideration that the possible gain would be about $100,000, was a question for the jury.

[2, 3] In our opinion plaintiff in any event was not entitled to recover the full amount represented by the fictitious obligations. The policy did not insure against the loss of profits amounting to approximately $16,000. Nor do we think that any loss was sustained by the surrender of the fictitious obligations issued prior to the date of the policy, and the acceptance instead of fictitious obligations issued after that date. Aside from the policy, one obligation was not worth any more than another. All were equally valueless.

[4, 5] We are of opinion, furthermore, that the mere writing of a letter by plaintiff to an automobile dealer, stating the amount of the wholesale obligations it held, and requesting a reply admitting or denying that the amount stated was correct, was insufficient to constitute a check or checking of the wholesale obligations. Such letter and request for reply could not possibly tend to show the existence or nonexistence of such obligations. Paragraph XII of the contract is not ambiguous. It required plaintiff to make an investigation, in order to find out whether the wholesale obligations were on hand as reported by the dealer.

We would suppose that a proper checking would also include the duty to see that the mortgaged automobiles reported to be at the dealer's place of business were actually there. Defendant's agreement to insure against loss was made subject to plaintiff's agreement to make a regular monthly checking of wholesale obligations. Plaintiff's agreement there-

by became a warranty. Rice v. Fidelity & Deposit Co. (C. C. A.) 103 F. 427; 14 R. C. L. 1026, 1027. The breach of that warranty has the effect to prevent recovery on the policy for losses incurred after the failure to make the first monthly checking.

The judgment is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.